Farnum and others vs. Johnson and another.

Farnum and others vs. Johnson and another.

*March 6 — March 31, 1885.*

VILLAGES: CONSTITUTIONAL LAW. *(1) Franchise to collect wharfage: Navigable waters. (2) Village board: Directory by-law. (3) Approval of grant.*

1. A village board has power under subd. 23, sec. 892, R. S., to grant a franchise to collect wharfage for the use of a pier on navigable waters. The delegation of such power to the board violates no constitutional rule.
2. A by-law of a village board requiring the name of the member offering a resolution to be entered upon the minutes, is directory only, and a failure to observe it does not invalidate the action of the board.
3. A grant or lease by the village board if read to and approved by the board before it is executed is valid although it contains provisions not specified in the original resolution authorizing its execution.

APPEAL from the Circuit Court for *Walworth* County.

The plaintiffs claim that they are entitled to a franchise to collect wharfage for the use by others of a certain pier or wharf built from the shore into the waters of Geneva lake, within the limits of the village of Geneva. They use this wharf as a landing-place for two steamers, owned and operated by them. The defendants are the owners of another steamer called "The Commodore," which they also operate on the same lake.

In August, 1883, the defendants landed their steamer at such wharf sixty-three times, for the purpose of receiving and discharging freight and passengers. This action was brought to recover wharfage therefor, at the rate of two dollars for each of such landings. The action was originally brought before a justice of the peace, the plaintiffs recovered, and the defendants appealed to the circuit court.

The facts are as follows: Broad street, in the village of Geneva, extends north and south, and the south end termi-

nates at the margin of the lake. This street is intersected by Lake street, which extends for a considerable distance along the margin of the lake, to the west. The pier in question abuts Lake street, immediately adjoining the west side of Broad street extended into the waters of the lake. Thirty years ago divers citizens of Geneva subscribed money with which they built a pier on the site of the present one, 120 feet into the lake. This pier was used indiscriminately by persons operating vessels on the lake, and from time to time was repaired by them. In 1875 one Newberry, who owned and operated a steamer on the lake, by permission of the village board of trustees, repaired and widened the original pier, and extended it thirty feet further into the lake. Afterwards, one Wilson became interested with Newberry in such steamer, and in another, and together they operated both steamers. Wilson added 100 feet to the pier. Wilson was then a part owner of " The Commodore " also, and the other owners paid a portion of the expense of such last-mentioned extension, but not under circumstances which gave them any interest in the pier. None of the present defendants had any interest in "The Commodore" at that time. Newberry afterwards died, and Wilson succeeded to his interests in the steamers and wharf, and operated such steamers and used the wharf until 1882, when these plaintiffs succeeded to his whole interests therein.

A history of the action of the village board of trustees, and of the plaintiffs in connection therewith, is set out in the sixth finding of fact, which is as follows: " That on and prior to March 29, 1883, said pier had become very much out of repair and unsafe, and that on said last-named day the village board of said village passed a resolution to award to the plaintiffs in this action a lease of said pier at the foot of Broad street, and assuming to grant them the same rights and privileges which they theretofore had under a certain former lease, dated June 9, 1882; and in pursuance

of such resolution the president and clerk of said village did, on the 4th day of April, 1883, assume to execute and deliver to the plaintiffs a certain lease in writing, wherein and whereby they assumed to vest the exclusive use of said pier in the plaintiffs as against all other traffic steamboats carrying freight or passengers for hire or gain, and in consideration of which privilege the plaintiffs were to erect a new coal-house, and put and keep the whole of said pier in good repair and sightly in appearance, and permit the free use of same for all purposes except for traffic steamboats; and that said lease was approved by the village board, April 27, 1883, and plaintiffs under said lease rebuilt and repaired said pier at an expense of about $400; also building a coal-house, according to the terms of said lease, at an expense of about $350.".

This finding should be corrected in one particular. The lease mentioned did not grant to the plaintiffs the exclusive use of the pier, but only of one side thereof, leaving all other persons at liberty to occupy the other side, upon payment of wharfage to the plaintiffs.

The plaintiffs practically rebuilt the original pier, and added 120 feet to it as it then stood. The defendants landed their steamer at the wharf the number of times and at the dates specified in the complaint.

In June, 1883, the village board passed an ordinance relating to wharves and wharfage, sections 1 and 2 of which are as follows:

" Section 1. All docks, wharves, and piers abutting upon any of the streets, highways, parks, or other public grounds within the corporate limits of Geneva, shall be deemed public docks, wharves, or piers, as the case may be, and shall be open to use by all boats and water-craft, of whatever kind, navigating the waters of Geneva lake, for the ordinary purposes of passage, and of taking and landing of passengers and freight, subject to such reasonable charges for wharfage

as may, from time to time, be prescribed, and to such rules, regulations, and restrictions as may, from time to time, be enacted by the village board.

"Section 2. The pier at the foot of Broad street, and connected with the sidewalk upon the west side of said street, is hereby assigned and set apart especially for the use of boats engaged in traffic, or the transportation of passengers or freight for hire, and to the exclusion, when needed for such use, of all other boats whatsoever."

This ordinance fixed rates of wharfage, and by an amendment thereto, adopted in August, 1883, such rate for vessels of the class to which "The Commodore" belongs was fixed at two dollars for each landing.

Upon the foregoing facts the trial court deduced the following conclusions of law: "(1) That the pier in question is a part of the public domain, which the defendants had the right to use for the purpose of landing the said steamboat, and discharging freight and passengers; (2) that the village of Geneva had no power or authority to confer exclusive rights in said pier to any citizen as against the public; (3) that the lease, ordinance, and resolution under which this suit is brought are void, as far as they attempt to confer upon the plaintiffs the exclusive rights in said pier or the right to collect rent therefor; (4) that the said judgment of the justice herein should be wholly reversed, and the defendants should recover their costs and disbursements, to be taxed."

Judgment for the defendants was accordingly entered, from which the plaintiffs appeal.

For the appellants there was a brief signed by *Chas. S. French* and *Fish & Dodge*, attorneys, and *F. M. Fish*, of counsel, and the cause was argued orally by *Mr. J. E. Dodge.* They cited *Cannon v. New Orleans*, 20 Wall. 577–582; *Wis. River Imp. Co. v. Manson*, 43 Wis. 255; *Wis. River Imp. Co. v. Lyons*, 30 id. 61; *Arimond v. G. B. & M. Canal Co.*

31 id. 316; *Att'y Gen. v. Eau Claire,* 37 id. 402; *State v. Eau Claire,* 40 id. 533; *Tewksbury v. Schulenberg,* 41 id. 584; *Black River F. D. Asso. v. Ketchum,* 54 id. 213; *Black River Imp. Co. v. La Crosse B. & T. Co.* id. 659.

For the respondents there was a brief signed by *J. V. Quarles,* of counsel, and oral argument by *Mr. T. W. Spence.*

LYON, J.  The whole of the pier as it stood in 1883, when the alleged cause of action accrued, had been erected by Newberry, Wilson, and the plaintiffs.  The original pier, built by the citizens in 1855, then disappeared, and forms no material or substantial part of the present pier.  All the testimony on the subject tends to show that the plaintiffs have succeeded to the interests of Newberry and Wilson therein.  We have no difficulty in holding, under the evidence, that the plaintiffs are the owners of the structure. The vital question in the case is, Had the village board of trustees lawful authority to confer upon the plaintiffs a franchise to collect wharfage for the use of the pier by others, as it has assumed to do?

Sec. 892, R. S. provides as follows: "The village board shall have power, by ordinance, resolution, by-law, or vote, . . . (23) to establish harbor and dock limits, and to regulate the location and manner of construction and use of all piers, docks, wharves, and boat-houses on any navigable waters, and fix rates of wharfage."  The waters of Lake Geneva are navigable in fact, and the above statute is applicable to Geneva village.

The right of the legislature to exercise directly, in aid of navigation, the powers conferred by the statute upon village boards, is undoubted.  Such power has been affirmed, in the judgments of this court, in many cases in principle like the present case.  These cases are collected in the brief of counsel for the plaintiff, and will be found cited in the report of the argument.  We are aware of no constitutional rule

which prohibits the delegation of the same powers to county, city, or village authorities. Our statutes are full of such delegations of authority to confer franchises upon persons or corporations. For example, county boards may grant charters to maintain bridges, plank and turnpike roads, and ferries in their respective counties, and to collect tolls for the use thereof. R. S. sec. 670, subds. 8, 10, 11. Sec. 892, above quoted, was taken by the revisers from then existing special charters. S. & B. Supp. to R. S. 193. Such has been the whole current of our legislation, and it undoubtedly accords with well-settled principles of constitutional law. See *Cannon v. New Orleans*, 20 Wall. 577.

The only limitation upon the power of the legislature in a case like this, whether exercised directly or by delegation, is that it must not impair the free use by the public of navigable waters. *Tewksbury v. Schulenberg*, 41 Wis. 584. Manifestly the structure in question is directly in aid of the navigation of Lake Geneva. No claim is made, and there is no testimony tending to show, that the rates of wharfage authorized by the amended ordinance of August, 1883, are unjust or unreasonable.

The ordinance of June, 1883, does not assume for the village or public any proprietary interest in the pier in question, or any other pier belonging to individuals. It merely declares that they are public piers,— that is, that their use is the proper subject of municipal regulation under the statute,— and ordains that they shall be for the use of all vessels navigating the lake, subject to reasonable charges for wharfage and to future regulation by the village board. The instrument of April 4, 1883, which is called a lease in the sixth finding of fact, will be found, on examination, to contain no assertion of any proprietary interest by the village in the pier, but is merely the grant of a franchise to the plaintiffs on the terms and conditions therein specified. True, that lease was executed before the ordinance of June,

1883, was passed. If there was any want of authority in the village board to make the grant at that time, the ordinance, which is in entire harmony with the grant, supplied the defect and rendered the grant operative.

It is claimed that the grant or lease of April, 1883, is invalid, because the name of the member of the board offering the same was not entered upon the minutes of the board, as required by its by-laws. This omission is an irregularity, but it does not affect the validity of the vote approving the instrument. The by-law is directory, and the failure to observe it in any given case does not invalidate the action of the board.

It is also claimed on behalf of the defendants that the resolution of the board authorizing the execution of the instrument of April 4, 1883, only authorized a renewal of a former lease, dated June 9, 1882 (referred to in the sixth finding); that it contains provisions not in the former instrument; and hence that it is invalid. A sufficient answer to this position is that the instrument was read to the board and approved by it before it was executed.

Our conclusions upon the whole case are that the village board had the power, under the statute, to grant to the plaintiffs the rights and privileges specified in the instrument of April, 1883; that the instrument and the ordinance are valid; and that the plaintiffs are entitled to collect wharfage of the defendants for the use of the pier.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment for the plaintiffs for the amount demanded in the complaint.